Eastern District of Kentucky
FILED
FEB 2 3 2006
At Ashland
LESLIE G. WHITMER
Clerk, U.S. District Court

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY

CASE # 0.06cv29-HRW

| | |
|---|---|
| **TIMOTHY PARSONS** | **PLAINTIFF** |
| 108 Hillcrest Court | |
| Russell, Kentucky 41169 | |
| | |
| **VS** | |
| | |
| **FedEx CORPORATION** | **DEFENDANTS** |
| Via its agent | |
| **CT CORPORATION SYSTEM** | |
| Kentucky Home Life Building | |
| Louisville, Kentucky 40202 | |
| | |
| **FEDEX EXPRESS** | |
| 3620 Hacks Cross Road | |
| 3rd Floor- Building B | |
| Memphis, TN 38125 | |
| **AND** | |
| | |
| **MIKE DAVIS** | |

1400 Airport Road

Huntington, WV 25704

AND

AMANDA GRIM

1400 Airport Road

Huntington, WV 25704

AND

BRENDA HARGUS

1400 Airport Road

Huntington, WV 25704

AND

GREG BARKDULL

609 Commerce Drive

Richmond, IN 47374

## COMPLAINT

Comes now the plaintiff, by and through counsel, and for his complaint state as herein:

### Preliminary Matters

1. That Plaintiff is a resident of Greenup County, Kentucky.

2. That Defendant FedEx CORPORATION is a Delaware Corporation with its principal place of business being located in Memphis, Tennessee. FDX is the parent company of FedEx Express.

3. According to the FedEx Corporation's web-site, all of its subsidiaries compete collectively in the marketplace and have their efforts coordinated.

4. FedEx Express corporation's worldwide headquarters and principal place of business are located in Memphis, Tennessee.

5. That Defendant Mike Davis is an employee of FedEx Express that possesses managerial authority over Plaintiff. Defendant Davis is a citizen of the State of West Virginia.

6. That Defendant Amanda Grim was an employee of FedEx Express at its Huntington, West Virginia station with managerial authority over Plaintiff at the time she engaged in the conduct that serves as a basis for this complaint. Defendant Grim is a citizen of the state of West Virginia.

7. That Defendant Brenda Hargus was an employee of FedEx Express at its Huntington, West Virginia station at the time she engaged in the conduct that serves as a basis for this complaint. Defendant Brenda Hargus is a citizen of the State of West Virginia.

8. That this court possesses personal jurisdiction over all of the parties by way of their residences within and/or their extensive contacts within the Commonwealth of Kentucky generally and Greenup County specifically.

9. This court possesses personal jurisdiction over all of the parties by way of Plaintiff's residence within and the Defendants' extensive contacts within the Commonwealth of Kentucky.

10. This cause of action involves Defendants with complete diversity of citizenship with regard to the Plaintiff and an amount in controversy that is in excess of $75,000. Therefore, this court possesses diversity subject matter jurisdiction over this matter.

11. Venue is proper before this court because a significant number of the events that gave rise to this complaint took place within the boundaries of Greenup County, Kentucky.

## FACTS COMMON TO ALL CAUSES OF ACTION

12. Plaintiff has been employed as a DOT Courier by Defendant FedEx Express, and its predecessor Federal Express, since November 11, 1996.

13. Until the events that give rise to this complaint plaintiff has had a sterling employee record with the company. This includes multiple incidents of his receiving 7 out of 7 on his employee evaluations by management.

14. Throughout the Summer of 2005 Plaintiff complained to his direct manager, Defendant Amanda Grim, that packages, containing narcotics that were being shipped to mail order customers, that he was unable to deliver on his first try were disappearing from his truck and then reappearing on the truck days later. This was a well known problem throughout the Huntington, West Virginia station where plaintiff was stationed.

15. Defendant Amanda Grim interacted with Plaintiff in a hostile manner whenever Plaintiff would lodge these complaints with her. Her manner became more and more hostile as time went along.

16. During the summer plaintiff witnessed many employees opening packages without being granted permission from management without suffering any disciplinary action

whatsoever. Plaintiff specifically saw Defendant Brenda Hargus engage in this behavior.

17. Plaintiff was absent from work for medical reasons from August 30, 2005 to September 1, 2005.

18. Upon returning to work the entire workplace acted in a cold manner toward plaintiff, including frequent mentions of his previous use of a legally prescribed narcotic several years ago.

19. On September 7, 2005 plaintiff was put on an investigative suspension with pay following a meeting with a Mr. Jim Evans and defendant Amanda Grim. In this meeting it was explained that a package that had been found opened in Plaintiff's truck was found along with a pornographic magazine and that plaintiff was to be put on suspension, during the investigation.

20. This action was taken against Plaintiff alone despite both the fact that his truck had been used by others during his period of absence and that the chain of custody had been compromised between the time that Jim Evans was made aware of the package's existence and the September 7, 2005 meeting with Evans and Grim.

21. Plaintiff did not return from his suspension until December of 2005.

22. Internal company policy requires that any paid suspension over 5 days in length requires the approval of upper management. Therefore, either individuals in the management structure beyond the Huntington Station were aware of the circumstances surrounding the suspension or internal company policy was circumvented by the Huntington Station.

23. In response to the conduct of the defendants, plaintiff filed an internal company EEO complaint on October 28, 2005. These procedures usually take a few weeks or so to investigate and deal with.

24. This investigation was not concluded until January 16, 2006, despite the fact that written company policy required that the investigation should have been concluded by November 24, 2005.

25. In a January 16, 2006 letter from Robert Center, the Managing Director of the Commonwealth District for FedEx Express, admits that the actions taken by management during the conducting of the investigation violated the policies, and the philosophy of FedEx Express.

## CAUSE OF ACTION NUMBER ONE: INVASION OF PRIVACY

26. ¶¶ 1-25 are hereby incorporated by reference.

27. Defendant Brenda Hargus was overheard publicly speaking of Plaintiff's use of a legally prescribed narcotic and implying that the use was still occurring.

28. Defendant Hargus had no legitimate reason to have the information in the first place. Nevertheless she broadcasted it publicly.

29. Employees of FedEx Express informed Plaintiff, upon his return to work in December, that the details of the nature of the investigation were common knowledge around the station. He was further informed that the implication was that the charges were true and that it would be a matter of time before they "got" him.

30. During the investigation Defendant Grim sent a note to plaintiff requesting that he sign medical release forms to allow the investigators to have access to his medical

records. She specifically told plaintiff it was because she felt that he was taking narcotics. Since the investigation was only for the opening of a package and the possession of sexually explicit material on company property, there was no legitimate reason for the investigators to need his medical records from years back.

31. In an October 3, 2005 letter to Plaintiff, Defendant Mike Davis, informed plaintiff that the investigation had uncovered a record of drug use, another false claim, which required that he allow the company to explore further his medical record. It was made clear that a failure to comply would be the basis for disciplinary action.

32. Plaintiff was exonerated from all charges brought against him during the investigation.

33. The actions alleged in this cause of action constitute both the giving of publicity that unreasonably placed plaintiff in a false light before the public and the causing of unreasonable publicity being given to plaintiff's private life.

34. All individual defendants were engaged in performing their official duties at the time that they performed the alleged conduct.

35. ¶¶ 86 - 94 are hereby incorporated by reference.

## CAUSE OF ACTION NUMBER TWO: ATTEMPTING TO EXTORT PLAINTIFF INTO COMMITTING FEDERAL CRIMINAL ACTS

36. ¶¶ 1-25 are hereby incorporated by reference.

37. During the course of the investigation attempts were made to place plaintiff upon medical leave.

38. Plaintiff never requested that he be placed upon a medical leave of absence at any point during the investigative suspension. Nor did plaintiff ever possess a medical issue that would justify him being able to use Family Medical Leave Act at any time during the investigative suspension.

39. Despite the fact that they knew he did not possess any medical issues that would justify its use, the management of defendant FedEx Express made repeated efforts to force plaintiff to file for FMLA time.

40. On December 9, 2005 plaintiff had a phone conversation with Greg Barkdull, the HCMP manager for FedEx Express. During this conversation Defendant Barkdull informed plaintiff that he was expected to inform FedEx Express' medical claim-paying administrator, by mail, that he had filed a request for medical leave on December 7, 2005, and provide supporting documentation, or that there would be serious repercussions. This was despite the fact that plaintiff had never suffered from symptoms that would justify such an action.

41. Plaintiff immediately called Faith Wallace at Broadspire, the claim-paying administrator, to inform her of Mr. Barkdull's comments. Ms. Wallace informed plaintiff that carrying out those instructions would cause him to commit insurance fraud and subject him to charges for insurance fraud and mail fraud.

42. On December 9, 2005 Mr. Barkdull sent a letter to plaintiff telling him that he had received plaintiff's request for medical leave and that there were serious implications connected to a failure to provide Broadspire with any information it may need to process the claim.

43. All the actions taken by FedEx Express employees alleged in this cause of action occurred within the scope of their duties.

44. ¶¶ 86 - 94 are hereby incorporated by reference.

## CAUSE OF ACTION NUMBER THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. ¶¶1-25 are hereby incorporated by reference.

46. The management of the Huntington, West Virginia Station for FedEx Express, specifically defendants Grim and Davis, has engaged in an intentional manner to inflict substantial emotional distress upon Plaintiff over the course of the summer and fall of 2005 and the winter of 2006.

47. The intent of this conduct has been to either cause plaintiff to resign his position or to create a false paper trail to justify his termination.

48. This course of behavior has also enlisted the help of defendant Hargus.

49. Defendant Hargus has been overheard by other employees stating that while they were unable to get plaintiff out in September they were not going to fail to do it with the current actions.

50. During the course of the September investigative suspension defendant FedEx Express and its employees and agents attempted to have plaintiff's Department of Transportation certification revoked based upon charges of drug use that the Huntington Station management knew were false. A loss of the DOT certification would have prevented the plaintiff from keeping his job.

51. These false claims also served as the basis for justifying an unnecessarily exhaustive examination of his medical records.

52. Every attempt by plaintiff to contact his manager, Defendant Grim, during the course of his suspension in order to comply with company policy was greeted with Grim either refusing to answer the phone or not being available. This included a call made in November by plaintiff in an effort to inform Grim that he would be coming into the station for the specific purpose of having her sign documents that were needed for him to be able to refinance his house.

53. ¶¶ 27-34 are hereby incorporated by reference.

54. ¶¶ 37-43 are hereby incorporated by reference.

55. Sometime in January 2006 defendant Davis was called to District Headquarters in Virginia to speak with management about a problem with the station. This call came within a matter of days after plaintiff's attorney contacted the District Human Resources Representative to request the name of the individual in the company's legal department who needed to be contacted to discuss putting an end to the harassment.

56. Upon arriving back at the Huntington Station Defendant Davis called Plaintiff into his office and issued a Warning Letter for workplace violence for an incident that occurred in November in which plaintiff appeared at the station while on suspension without first informing a manager that he would be coming in. Defendants Davis and Grim were aware of the situation at the time of its occurrence and failed to act upon it at the time. This letter was a purely retaliatory action.

57. Company policy states that if an employee receives three warning letters within a 12 month period they are automatically terminated.

58. On or about February 2, 2006 plaintiff was accompanied on his route by a supervisor. Part of Plaintiff's duties that day included delivering a letter to his attorney from FedEx Express corporate headquarters that had been shipped via the company's 2 day service.

59. Within a few days of plaintiff's supervisor discovering that Plaintiff's attorney was on his route plaintiff was informed that an individual located in Lewis County, Kentucky had called the station and informed management that Plaintiff got into a shouting match with him. This shouting match never happened. This "argument" was used as the basis for transferring plaintiff to another route that was far less appealing due to its remote location and plaintiff's unfamiliarity with the area. Due to the hours required by the new route plaintiff was prevented from having direct personal contact with his counsel.

60. The drivers that have replaced plaintiff on his former route have engaged in a practice of stopping in a parking lot across the street from plaintiff's attorney's office and pausing for a moment. They do not always get out to make deliveries to the bank that uses that lot.

61. Sometime in the middle of February 2006 plaintiff was asked to come in on his day off to help deal with a route that contained so many packages that it could not be handled by one person. Plaintiff complied with this request. The area that constituted the route included many communities that have recently undergone 911 implementation. This meant that many of the addresses on the packages were wrong.

62. On February 15, 2006 plaintiff was asked to drive a different route. He was also assigned a different truck than the one he normally drove. The actual truck that was used had been sitting unused for over three months and had remained within the exclusive control of the station's management for that period of time. The truck had been washed clean from top to bottom and was clean inside and out. However, once he began his route plaintiff noticed that a half-smoked marijuana joint had been left sitting on the floor in an area that those packing the truck with packages would have had no reason to be in. This was an effort to set plaintiff up for management to "find" the joint after he got back from his route.

63. On February 21, 2006 plaintiff was called into defendant Davis' office and issued a second warning letter for "Falsification of Delivery Information." The incident allegedly occurred on the day that Plaintiff complied with the request to come in on his day off. Plaintiff was also placed upon a second investigative suspension with pay.

64. Plaintiff did not engage in the behavior alleged in the warning letter.

    person should be expected to endure it.

65. The conduct of the defendants has been so atrocious, intolerable, extreme, and outrageous as to exceed the bounds of decency.

66. ¶¶ 86-94 are hereby incorporated by reference.

## CAUSE OF ACTION NUMBER FOUR: DEFAMATION OF CHARACTER

67. ¶¶ 1-34 are hereby incorporated by reference.

68. The note mentioned in ¶30 mentioned a Dr. that is reputed for abusing his prescribing power for narcotics. Plaintiff has never been to this Doctor despite defendant Grim's insistence that he has.

69. Defendants' statements, alleged in ¶¶ 27-34 were defamatory in nature in that they alleged drug abuse and the use of pornography.

70. Many of these statements were made to third parties that had no privileged purpose for being given the information.

71. All of these claims of continued drug abuse and the use of pornographic materials are completely false.

72. Plaintiff has been clearly identified as the individual about whom these statements were being made.

73. The statements were made intentionally with the purpose of undermining plaintiff's reputation among his co-workers and the community at large.

74. Plaintiff has suffered extreme loss of standing and reputation in the community.

75. ¶¶ 86 - 94 are hereby incorporated by reference.

## CAUSE OF ACTION NUMBER FIVE: HARRASSMENT

76. ¶¶ 1-75 are hereby incorporated by reference.

77. The conduct of defendants in the alleged incidents constitutes a violation of the West Virginia Human Rights Act and *W.Va Code*, 5-11-2 [1994].

78. ¶¶ 86 - 94 are hereby incorporated by reference.

## CAUSE OF ACTION NUMBER SIX: OUTRAGOUS CONDUCT

79. ¶¶ 1-75 are hereby incorporated by reference.

80. Company officials beyond the Huntington Station at FedEx Express were made aware of the behavior directed toward plaintiff as early as October, 2005 by plaintiff via e-mails and phone calls.

81. Company officials have made no effort to stop the behavior and therefore have implicitly condoned the conduct.

82. ¶¶ 86 - 94 are hereby incorporated by reference.

## CAUSE OF ACTION NUMBER SEVEN: RETALITORY DISCHARGE

83. ¶¶ 1-82 are hereby incorporated by reference.

84. The actions taken by defendants are counter to written corporate policy.

85. ¶¶ 86 - 94 are hereby incorporated by reference.

## DAMAGES SUFFERED BY PLAINTIFF

86. Plaintiff has suffered greatly from mental and physical problems directly related to the organized campaign that Brenda Hargus has publicly stated exists.

87. The loss of reputation and standing in the community has caused him great emotional distress.

88. The financial difficulties experienced during the suspension by the loss of the overtime pay he had received in virtually every paycheck he ever received from

FedEx were severe and had caused great mental anguish, a loss of a sense of self-worth, and marital problems.

89. Since returning to work, plaintiff has suffered from an overwhelming sense of paranoia that he just simply cannot shake.

90. Plaintiff has become depressed to the point of needing to seek professional mental help.

91. Plaintiff has suffered from insomnia since the beginning of these matters. This is a condition that he has not suffered from in the past.

92. Plaintiff has experienced a dramatic rise in the problems that his GERD has caused him since the beginning of this incident.

93. Plaintiff has experienced an overwhelming sense of exhaustion which he has been forced to live with for the past six months.

94. Plaintiff has suffered mental and physical distress to the point that no reasonable

## **PRAYER FOR DAMAGES**

95. Plaintiff seeks relief from the defendants in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) for medical bills, damage to the property, and pain and suffering.

96. Plaintiff seek relief from the defendant in the form of punitive damages in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00).

*[signature]*

JAMES D. OSBORNE

Member of the Bar of the Federal District Court for the Eastern District of Kentucky.

KBA# 90361

Law Firm of James Osborne, PLLC

PO Box 1207

South Shore, Kentucky 41175

606-932-2330

ATTORNEY FOR THE PLAINTIFF